**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**
LAW OFFICE OF BARRY E. JANAY, P.C.
Barry E. Janay, Esq. (Attorney ID No. 216812017)
354 Eisenhower Parkway, Suite 1250
Livingston, New Jersey 07039
Telephone: (908) 460-1741
Email: bjanay@lobej.com
Attorneys for Debtor, Ilias Sarris

| | |
|---|---|
| In re:<br><br>ILIAS SARRIS,<br><br>Debtor. | Case No.: 25-14910 (SLM)<br>Chapter: 7<br>Judge: SLM<br>Hearing Date: Requested: October 6, 2026 at 9:00 a.m. (to be set by Order Shortening Time)<br>Oral Argument Requested if Opposed |

**MEMORANDUM OF LAW IN SUPPORT OF DEBTOR'S EMERGENCY MOTION FOR ENTRY OF AN ORDER (I) CONVERTING CASE FROM CHAPTER 7 TO CHAPTER 13 PURSUANT TO 11 U.S.C. § 706(a), AND (II) STAYING AND ADJOURNING THE CHAPTER 7 TRUSTEE'S OCTOBER 5, 2026 AUCTION AND OCTOBER 6, 2026 SALE HEARING**

Ilias Sarris (the "Debtor"), by and through undersigned counsel, respectfully submits this memorandum of law pursuant to D.N.J. LBR 9013-1(a)(3) in support of the Debtor's emergency motion for entry of an order (i) converting this case from chapter 7 to chapter 13 pursuant to 11 U.S.C. § 706(a), and (ii) staying and adjourning the chapter 7 trustee's auction and sale hearing (the "Motion").

## PRELIMINARY STATEMENT

The Debtor has an express statutory right to convert this chapter 7 case to chapter 13. The case has never been converted, and the Debtor, an individual with regular income, no secured debt, and $76,783 in scheduled unsecured debt, is eligible to be a chapter 13 debtor. This case never should have been a chapter 7 case: the Debtor has always had regular income, and his creditors will

be paid in full through a plan funded by that income and his family's commitments. He seeks conversion for the core purpose of chapter 13: to pay every creditor in full, with interest, while keeping his 23.67% interest in his family's company. That has been his stated goal since he raised chapter 13 with the Trustee as early as April 2026, months before any auction was proposed; the Trustee himself has certified that the Debtor raised conversion before the Settlement was reached. The goal is not to avoid paying creditors; every creditor will be paid in full. The goal is to keep an asset that provides more than half of the Debtor's income and that he intends to pass to his son.

Conversion will cost creditors nothing. Up to $90,000 on deposit in his wife's bank account, to be paid within thirty days after conversion, and up to $1,000 per month from his son and $500 per month from the Debtor and his wife, for up to sixty months (ceilings rather than fixed amounts, for up to $180,000 in total), will fund a plan to pay all allowed unsecured claims in full with interest, all allowed chapter 7 administrative expenses in full, and the chapter 13 trustee's fee. Conversion would terminate the chapter 7 trustee's service and end the proposed sale. 11 U.S.C. § 348(e). Until the Court rules on conversion, however, a brief stay of the October 5 Auction and adjournment of the October 6 Sale Hearing is necessary to preserve the status quo. Otherwise the Debtor's right to convert, and an asset worth at least approximately $596,000 based on the real estate tax assessment, net of Company financing, that provides more than half of his income, could be lost before the Court can act.

## STATEMENT OF FACTS

The facts are set forth in the Certification of Ilias Sarris (the "Debtor Cert."), the Certification of Counsel, and the Funding Certifications of the Debtor's wife and son, each filed herewith and incorporated by reference. In summary:

1. The Debtor filed a voluntary chapter 7 petition on May 7, 2025, and Jeffrey A. Lester was appointed as chapter 7 trustee (the "Trustee"). The case has never been converted. (Debtor Cert. ¶ 2.)

2. The Debtor owns a 23.67% membership interest (the "Membership Interest") in Sarris Family, LLC (the "Company"), a family company whose asset is the commercial property at 4135 U.S. Route 9, Freehold, New Jersey 07728 (the "Property"), leased to a diner. The Company's managing member is the Debtor's nephew, George K. Sarris, II. The Membership Interest pays the Debtor regular distributions, which totaled $17,774, $18,603, and $19,786 in 2023, 2024, and 2025, more than half of his personal income. The Property's net assessed value for real estate tax purposes is $2,957,100. The Debtor's 23.67% share of that value is approximately $700,000, or approximately $596,000 net of the Company's financing as reported on the Debtor's Schedules K-1, far more than the $85,000 bid of the Company's managing member. An independent valuation of the Property and the Membership Interest is underway and will be submitted when complete. (Id. ¶¶ 4–7 & Exs. B, D, E.) The Debtor's original schedules did not list the Membership Interest as property of the estate, a status the Debtor has disputed and that has never been adjudicated, but they reported the distributions it pays as income on Schedule I, under interest and dividends. (Dkt. No. 1; Lester Certif., Dkt. No. 19-1, ¶ 9.) The Debtor filed an amended Schedule A/B listing the Membership Interest in September 2026. (Dkt. No. 30.)

3. The Trustee moved to approve a settlement under which the estate would release its interest in the Company to the Debtor for $65,055.37, enough to pay all filed unsecured claims ($24,055.37) in full plus administrative expenses and the Trustee's commission, subject to higher and better offers (Dkt. No. 19, filed August 10, 2026) (the "Settlement Motion"). George K. Sarris, II objected (Dkt. No. 28) and offered $85,000; the Debtor increased his offer (Dkt. No. 31).

4. The September 22, 2026 hearing on the Settlement Motion was rescheduled to October 6, 2026 at 9:00 a.m. Counsel to the Trustee thereafter proposed by email a Zoom auction between the Debtor and George K. Sarris, II on October 5, 2026 at 3:00 p.m. (the "Auction"), with the winning bid to be confirmed by the Court at the October 6, 2026 hearing (the "Sale Hearing") and closing within five business days after entry of an order. (Certification of Counsel ¶¶ 3–4 & Ex. 1.)

5. The Debtor is an individual with documented, long-standing regular income from Social Security and Company distributions, no secured debt, and $76,783 of scheduled unsecured debt. A chapter 13 plan will be funded with up to $90,000, which is on deposit in his wife's bank account, to be paid within thirty days after conversion, up to $1,000 per month for up to sixty months from his son, and up to $500 per month for up to sixty months from the Debtor and his wife (up to $180,000 in total, with additional family contributions available if needed). The monthly amounts are ceilings: only what is needed will be paid to cover, in the amounts allowed by the Court, all allowed unsecured claims with interest, all allowed chapter 7 administrative expenses, and the chapter 13 trustee's fee. (Debtor Cert. ¶¶ 6, 9–10, 12; Funding Certifications.)

6. As early as April 2026, the Debtor told the Trustee that he intended to seek conversion to chapter 13; the Trustee said he would oppose conversion; and the parties then reached the Settlement on August 4, 2026, which the Trustee entered into in part to avoid the expected conversion motion. (Debtor Cert. ¶ 11 & Ex. A; Lester Certif., Dkt. No. 19-1, ¶¶ 9–14.) The Debtor retained current counsel on September 28, 2026, and this Motion followed within days. (Debtor Cert. ¶ 3; Certification of Counsel ¶ 2.)

## LEGAL ARGUMENT

### I. THE DEBTOR HAS A STATUTORY RIGHT TO CONVERT THIS CASE TO CHAPTER 13.

"The debtor may convert a case under this chapter to a case under chapter 11, 12, or 13 of this title at any time, if the case has not been converted under section 1112, 1208, or 1307 of this title." 11 U.S.C. § 706(a). Conversion is by motion. Fed. R. Bankr. P. 1017(f)(2). The only statutory conditions are that the case has not previously been converted and that the debtor may be a debtor under chapter 13. 11 U.S.C. § 706(a), (d). Both are met. This case was filed under chapter 7 and has never been converted. (Debtor Cert. ¶ 2.)

## II. THE DEBTOR IS ELIGIBLE FOR CHAPTER 13.

Chapter 13 is available to an individual with regular income who, "on the date of the filing of the petition," owes noncontingent, liquidated unsecured debts of less than $526,700 and secured debts of less than $1,580,125. 11 U.S.C. §§ 101(30), 109(e). On May 7, 2025, the Debtor had no secured debt and $76,783 of unsecured debt. (Debtor Cert. ¶ 10.) His regular income, from Social Security and Company distributions, is long-standing and documented: Social Security pays him $1,613 per month, and the Company paid him distributions of $17,774, $18,603, and $19,786 in 2023, 2024, and 2025. (Id. ¶¶ 6, 9 & Exs. C–D.) That income was disclosed from the outset; it is not newly acquired for purposes of this Motion.

## III. THIS CASE NEVER SHOULD HAVE BEEN A CHAPTER 7 CASE.

Chapter 7 is liquidation: a trustee collects and sells the debtor's nonexempt property and distributes the proceeds to creditors. 11 U.S.C. §§ 704(a)(1), 726. Chapter 13 is designed for an individual with regular income who wants to keep his property and pay his creditors through a plan funded by future income. 11 U.S.C. §§ 109(e), 1306(b), 1322(a)(1). This case never should have been filed under chapter 7. From the day it was filed, the Debtor fit chapter 13, not chapter 7. He had regular, long-standing income from Social Security and Company distributions; he had no secured debt and $76,783 in unsecured debt; and the Membership Interest gives him a steady stream of distributions that makes up more than half of his income. (Debtor Cert. ¶¶ 6, 9–10.) Today he also has $90,000 on deposit and the commitment of his family to help him pay every creditor in full. (Id. ¶ 12; Funding Certifications.)

The record confirms this. Every resolution proposed in this case, including the Trustee's own Settlement, has been built around the Debtor paying his creditors in full. (Lester Certif., Dkt. No. 19-1, ¶¶ 12, 14.) That is what chapter 13 is for. A plan funded by the Debtor's regular income and his family's commitments will pay every allowed claim in full, under this Court's supervision. Liquidating the Membership Interest would do the opposite: it would take away the very income

stream that makes repayment possible, and impose the cost of an auction and sale, to pay claims the Debtor can pay in full through a plan.

Section 706(a) exists for exactly this situation. It allows a debtor whose circumstances call for repayment rather than liquidation to move his case into chapter 13, so that creditors are paid through a plan under the Court's supervision. Conversion does not take anything from creditors. It corrects the choice of chapter, putting this case where it belonged from the start, and it is what the Debtor has sought since he raised chapter 13 with the Trustee as early as April 2026. (See Point IV below.)

**IV. THE DEBTOR SEEKS CONVERSION IN GOOD FAITH.**

A debtor who has engaged in bad-faith conduct may forfeit the right to convert, but only in an atypical case. *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 373–75 & n.11 (2007). The debtor in *Marrama* had misrepresented the value of his home and transferred it to a trust to shield it from creditors, and moved to convert after the trustee sought to recover it. Nothing like that is present here.

The Debtor's original schedules did not list the Membership Interest as property of the estate. That is consistent with the Debtor's position, which he took with the Trustee and which has never been adjudicated, that the interest is not property of the estate. (Lester Certif., Dkt. No. 19-1, ¶ 9; see Point VII below.) And the interest was never hidden. The schedules disclosed the income it produces from the outset, reporting the Company distributions on Schedule I under interest and dividends (Dkt. No. 1), and the Debtor has never transferred or encumbered the interest. The Trustee has known of the Membership Interest since April 2026 at the latest: by then he had taken the position that the Debtor's membership rights and distributions are property of the estate, and the Debtor, in response, told him that he intended to seek conversion. (Lester Certif., Dkt. No. 19-1, ¶¶ 4–5, 8–9; Debtor Cert. ¶ 11.) The Trustee's own Settlement was built around the interest. The Debtor later listed the Membership Interest on an amended Schedule A/B in September 2026. (Dkt. No. 30.) A debtor who discloses the income from an asset on his schedules from the outset, whose

trustee knows about the asset and negotiates over it for months, and who later lists it on amended schedules, is not the "atypical" debtor *Marrama* describes.

Nor is this an eleventh-hour tactic. As the Trustee himself has certified, the Debtor "indicated his intention to seek conversion of the case to chapter 13" before any settlement was reached; the Trustee said he would oppose it; and the Trustee then negotiated the Settlement to avoid "the expense and uncertainty of outcome associated with . . . conversion of the case to chapter 13," acknowledging that he would otherwise "have to oppose an expected motion by the Debtor for conversion." (Lester Certif., Dkt. No. 19-1, ¶¶ 9–10, 12–13; Debtor Cert. ¶ 11 & Ex. A.) The Debtor raised chapter 13 as early as April 2026, months before any auction was proposed. The Settlement reached on August 4, 2026 was designed to achieve the same result conversion will achieve: payment in full of every creditor, with the Membership Interest remaining with the Debtor. Only when George K. Sarris, II's competing bid overtook the Settlement did the Debtor return to the chapter 13 path he had first proposed, within days of retaining new counsel. (Debtor Cert. ¶¶ 3, 11; Certification of Counsel ¶ 2.) The path in between was charted with prior counsel. (Debtor Cert. ¶ 3.)

The Debtor is not seeking conversion to avoid paying creditors. The opposite is true: the plan he proposes will pay every allowed claim in full, with interest, together with every allowed chapter 7 administrative expense. What conversion allows is for the Debtor to pay those amounts while keeping the Membership Interest, an asset that provides more than half of his income and that he intends to pass to his son. That is precisely the choice chapter 13 offers a debtor: retain property, and pay creditors at least what a liquidation would bring. 11 U.S.C. §§ 1306(b), 1325(a)(4). The Debtor told the Trustee months ago that this was what he wanted to do. (Lester Certif. ¶ 9.) That conversion also ends the chapter 7 sale process is the consequence the Code itself attaches to conversion, 11 U.S.C. § 348(e), not its object.

## V. CONVERSION WILL PAY ALL CREDITORS AND ALL CHAPTER 7 ADMINISTRATIVE EXPENSES IN FULL.

A plan must give each unsecured creditor at least what it would receive in a chapter 7 liquidation. 11 U.S.C. § 1325(a)(4). The Debtor's plan will pay every allowed unsecured claim in full, with interest at the legal rate. No creditor could receive more than that in a liquidation, so the plan satisfies § 1325(a)(4) however the Membership Interest is valued, and whether or not it is property of the estate. The value of the Membership Interest therefore need not be determined to decide this Motion.

The plan must also pay allowed administrative expenses in full, which may be paid in deferred cash payments over the life of the plan. 11 U.S.C. §§ 503(b), 507(a)(2), 1322(a)(2). Up to $90,000, which is already on deposit in the bank account of the Debtor's wife, will be paid to the chapter 13 trustee within thirty days after conversion, which is enough by itself to pay every filed unsecured claim in full and a substantial part of the chapter 7 administrative expenses. His son has committed up to $1,000 per month for up to sixty months (up to $60,000), and the Debtor and his wife have committed up to $500 per month for up to sixty months (up to $30,000), for a total commitment of up to $180,000. The monthly amounts are ceilings, not fixed payments: only what is needed to pay the amounts the Court allows will be paid. If more is needed, members of the Debtor's family are prepared to contribute additional funds. Schedule J is not a reliable measure of plan capacity here. Official Form 106J asks the debtor to "Describe Your Household" and compares expenses against the combined household income reported on Schedule I, yet asks whether the expenses include anyone "other than yourself and your dependents," without addressing a non-filing spouse. The Debtor's figures were estimates prepared for a chapter 7 case, not a chapter 13 budget, and it is not clear whether they reflect his own expenses or those of his entire household. They include approximately $650 per month for food, $250 per month for clothing, and $1,000 per month for rent paid to a family member who may be able to reduce it. Those discretionary expenses can also be reduced if necessary, and an amended Schedule J will be filed upon conversion. (Debtor Cert. ¶¶ 9, 12; Funding Certifications.) The Debtor's son, George

Sarris, is the intended recipient of the Membership Interest and has his own stake in the plan's success. (Debtor Cert. ¶ 13.) The Debtor's own income covers his household expenses, so the plan funding described above is available in full for the plan. (Id. ¶¶ 6, 9.)

The amount of the chapter 7 administrative expenses is not yet known. No fee application has been filed, the Trustee has said he would seek his counsel's full fees and his own compensation on a quantum meruit basis (Lester Certif. ¶ 10), and any allowance will be fixed by the Court under 11 U.S.C. §§ 326(a) and 330. That uncertainty is no obstacle to conversion. A plan routinely provides for administrative expenses "as allowed," and feasibility is determined at confirmation. The committed funding, together with the additional family contributions available if needed, will allow the Debtor to propose, and if necessary modify, a plan that pays in full whatever the Court allows. The Debtor reserves the right to object to any claim or fee application, and the payments will be reduced to the extent the allowed amounts are lower. If the Debtor fails to perform, any party may seek dismissal or reconversion. 11 U.S.C. § 1307(c).

## VI. THE AUCTION SHOULD BE STAYED PENDING DETERMINATION OF CONVERSION.

The Court has authority to stay and adjourn the Auction and the hearing on the Settlement Motion. The Auction is part of a proceeding before this Court, and no sale may be approved without notice, a hearing, and this Court's approval. 11 U.S.C. § 363(b)(1). The Court controls its own proceedings and may enter any order necessary or appropriate to carry out the Code. 11 U.S.C. § 105(a). The relief is directed at the Trustee, an estate fiduciary, and to the extent it is viewed as injunctive, no bond is required of a debtor. Fed. R. Bankr. P. 7065.

**The Auction serves no creditor interest.** This is the central point. Under the Debtor's plan, every allowed claim, all allowed chapter 7 administrative expenses, and the Trustee's allowed compensation will be paid in full. (Debtor Cert. ¶ 12; Funding Certifications.) The Auction cannot give any creditor more than payment in full. What it would decide is only whether the Debtor keeps the Membership Interest and the income it provides, and it turns principally on which bidder can raise the most cash on a few days' notice. Staying it pending conversion costs creditors nothing.

**The Debtor is likely to succeed on conversion**, for the reasons stated in Points I through V above.

**The harm from proceeding would be irreparable.** Under the proposed procedures, the winning bid would be confirmed the morning after the Auction and the sale would close within five business days. A § 363(b) sale to a good-faith purchaser generally cannot be undone on appeal absent a stay. 11 U.S.C. § 363(m). The Debtor would permanently lose an asset worth at least approximately $596,000 based on the real estate tax assessment, net of Company financing, and the distributions that make up more than half of his income, and his statutory right to convert would be lost. (Debtor Cert. ¶¶ 6–7, 16.)

**The proposed purchaser is the Company's managing member.** George K. Sarris, II controls the Company's operations, books, and distributions, and his $85,000 bid is a small fraction of the interest's value based on the tax assessment. (Debtor Cert. ¶¶ 7–8.) The interest has not been marketed beyond the two existing bidders. (Id. ¶ 8.) Under the Company's own Operating Agreement, a member's interest cannot be sold to an outsider without unanimous consent, so there is no outside market; a bankrupt member's interest is to be valued by independent appraisers and shared pro rata among all members; and nearly every Company decision requires unanimity, so a purchase by George K. Sarris, II would eliminate the Debtor's vote and increase his own interest from 33.33% to 57%. (Id. & Ex. B §§ 4.3, 5.2, 5.3, 5.5.1.) The Debtor does not ask the Court to enforce § 5.5.1 against the estate; the point is that the members' own agreement rejects a two-bidder auction as a measure of value.

**A brief stay harms no one.** The Membership Interest and the Property are not wasting assets; the Property continues to generate rent. (Debtor Cert. ¶ 17.) If conversion is denied, the Auction can be rescheduled promptly.

## VII. ALTERNATIVELY, THE TRUSTEE CANNOT SELL AN INTEREST THAT HAS NEVER BEEN DETERMINED TO BE PROPERTY OF THE ESTATE.

Even if the Court does not convert this case, the Auction cannot go forward. A trustee may sell only "property of the estate." 11 U.S.C. § 363(b)(1). Whether the Membership Interest is

property of the estate has been disputed from the outset. The Trustee took the position that the Debtor's rights as a member of the Company, including his right to distributions, are property of the estate, and the Debtor disputed that position. (Lester Certif., Dkt. No. 19-1, ¶¶ 8–9.) That dispute has never been decided.

The Trustee himself has acknowledged that it must be. In his own words, without the Settlement he "would have to . . . obtain a determination that the LLC interest is property of the estate and then value, market, and sell the interest." (Id. ¶ 13.) He has never sought that determination, which requires an adversary proceeding. Fed. R. Bankr. P. 7001. The Settlement Motion asks the Court to approve a compromise of the dispute under Rule 9019. It does not determine the estate's interest, and it cannot be used to auction the Membership Interest to a third party as though that question had been resolved in the Trustee's favor. The proposed Auction would skip the very determination the Trustee concedes is required.

Accordingly, if the Court does not convert this case, no auction or sale of the Membership Interest may proceed unless and until the Trustee obtains, in a properly commenced adversary proceeding, a final determination that the Membership Interest is property of the estate. The Debtor opposes the Auction and any sale of the Membership Interest to George K. Sarris, II.

## VIII. CAUSE EXISTS TO HEAR THE MOTION ON SHORTENED TIME.

The Court "for cause shown may in its discretion with or without motion or notice order the period reduced." Fed. R. Bankr. P. 9006(c)(1). The twenty-one-day notice periods in D.N.J. LBR 9013-2(a)(1) and Fed. R. Bankr. P. 2002(a)(4) are not among the periods that may not be reduced. *See* Fed. R. Bankr. P. 9006(c)(2). The Debtor has submitted Local Forms Application for Order Shortening Time and Order Shortening Time Period for Notice, Setting Hearing and Limiting Notice, as D.N.J. LBR 9013-2(c) requires.

Cause exists because the Auction is scheduled for October 5, 2026 at 3:00 p.m., and the Sale Hearing for October 6, 2026 at 9:00 a.m., both of which will occur before the Motion could be heard on regular notice. The Debtor retained current counsel on September 28, 2026, and has

moved promptly. The Debtor therefore asks the Court to enter the proposed Interim Order staying the Auction and to hear the Motion on October 6, 2026 at 9:00 a.m., when the Court has already scheduled a hearing in this case on the Settlement Motion. Absent that relief, the relief requested would be rendered moot. The Debtor proposes to serve all creditors and parties in interest as set forth in the Certification of Counsel.

## CONCLUSION

For the foregoing reasons, the Debtor respectfully requests that the Court enter an order, in the form submitted herewith, (i) converting this case to a case under chapter 13, and (ii) pending such conversion, staying and adjourning the Auction and the Sale Hearing, and (iii) in the alternative, directing that no auction or sale of the Membership Interest proceed unless and until the Trustee obtains, in an adversary proceeding, a final determination that it is property of the estate, together with such other relief as is just and proper.

LAW OFFICE OF BARRY E. JANAY, P.C.
Attorneys for Debtor, Ilias Sarris

By: /s/ Barry E. Janay, Esq.
Barry E. Janay, Esq.

Dated: October 1, 2026