**RABINOWITZ, LUBETKIN & TULLY, LLC**
293 Eisenhower Parkway, Suite 100
Livingston, N.J. 07039
(973) 597-9100
Jonathan I. Rabinowitz
Henry M. Karwowski
jrabinowitz@rltlawfirm.com
Attorneys for Jeffrey A. Lester, Chapter 7 Trustee

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>ILIAS SARRIS,<br><br>Debtor. | Case No. 25-14910 (SLM)<br><br>Chapter 7<br><br>Hearing Date: Nov. 3, 2026 at 2:30 PM |

**OPPOSITION OF JEFFREY A. LESTER, CHAPTER 7 TRUSTEE, TO DEBTOR'S MOTION FOR ENTRY OF ORDER CONVERTING CASE FROM CHAPTER 7 TO CHAPTER 13 PURSUANT TO 11 U.S.C. § 706(a)**

Jeffrey A. Lester, Chapter 7 Trustee (the "Trustee") for the bankruptcy estate of Ilias Sarris (the "Debtor"), hereby submits this Opposition to the Debtor's Motion for Entry of Order Converting Case from Chapter 7 to Chapter 13 Pursuant to 11 U.S.C. § 706(a). In opposing the Motion, the Trustee respectfully states as follows:

**PRELIMINARY STATEMENT**

1. In response to the Trustee's pending Motion to Approve Settlement Agreement, pursuant to which the Trustee agreed to waive and release the estate's interest in Sarris Family, LLC (the "LLC") to the Debtor in exchange for certain consideration, and pursuant to which the Trustee received a higher and better off from George K. Sarris, another member of the LLC, and pursuant to which, in accordance with this Court's instructions, the Trustee scheduled an auction sale of the interest, the Debtor now seeks conversion of this case pursuant to Bankruptcy Code

section 706(a) on the grounds, among others, that he seeks the relief sought in good faith and conversion will pay creditors and chapter 7 administrative expenses in full. Motion (ECF No. 33).

2. The Trustee opposes the Motion on the basis that the Debtor fails to meet his burden of proving cause for conversion under section 706(a). Thus, as set forth in more detail below, the Trustee respectfully requests that unless the Debtor can meet his burden with a further showing, this Court deny the Motion.

## LEGAL ARGUMENT

### THE DEBTOR FAILS TO MEET HIS BURDEN OF SHOWING CAUSE FOR CONVERSION OF THIS CASE PURSUANT TO SECTION 706(a).

3. In moving for conversion, the Debtor argues that he has a statutory right to convert this case to chapter 13; that he is eligible for chapter 13; that "this case should never have been a chapter 7 case"; that he seeks conversion in good faith; and that conversion will pay all creditors and all chapter 7 administrative expenses in full. Br. (ECF No. 33-9) at 4-9.

4. More specifically, on the issue of good faith, the Debtor maintains that his interest in the LLC "was never hidden"; that "the Motion does not represent an "eleventh-hour tactic"; and that he is not seeking conversion in order to avoid paying creditors. Id. at 6-7.

5. And with respect to his intention to pay all creditors in full under a chapter 13 plan, the Debtor alleges that the amount of $90,000 will be paid to a chapter 13 trustee within 30 days of conversion "to pay every filed unsecured claim in full and a substantial part of the chapter 7 administrative expenses"; that "[h]is son has committed up to $1,000 per month for up to sixty months (up to $60,000), and the Debtor and his wife have committed up to $500 per month for up to sixty months (up to $30,000), for a total commitment of up to $180,000"; and that "[i]f more is needed, members of the Debtor's family are prepared to contribute additional funds." Id. at 8. He concludes that "[c]onversion will cost creditors nothing." Id. at 2. He adds that his Schedule J

contains only "estimates" of expenses, that "it is not clear whether they reflect his own expenses or those of his entire household," and that "[t]hose discretionary expenses can also be reduced if necessary." Id. at 8-9.

6. As shown below, the Debtor fails to meet his burden of showing that these allegations amount to cause for conversion.

**I. The Debtor Must Show Cause for Conversion.**

7. As the Supreme Court has ruled, the debtor's "right" to convert a case from chapter 7 to chapter 13 is not absolute. Marrama v. Citizens Bank of Mass., 549 U.S. 365, 374-75 (2007)

8. Under section 706(a), a debtor may convert a case under chapter 7 to chapter 13 at any time if the case has not already been converted. Under section 706(d), however, a case may not be converted to a case under another chapter "unless the debtor may be a debtor under another chapter." Under section 1307(c), in turn, a chapter 13 case may be either dismissed or converted for "cause." Although section 1307 does not cite bad faith conduct as "cause," bankruptcy courts nevertheless routinely treat such conduct as a basis for dismissal. Marrama, 549 U.S. at 373. "In practical effect, a ruling that an individual's Chapter 13 case should be dismissed or converted to Chapter 7 because of prepetition bad-faith conduct, including fraudulent acts committed in an earlier Chapter 7 proceeding, is tantamount to a ruling that the individual does not qualify as a debtor under Chapter 13." Id. at 373-74. Thus, a court can deny, on the basis of bad faith, a motion to convert a case from chapter 7 to chapter 13. Ibid. Indeed, "[n]othing . . . limits the authority of the court to take appropriate action in response to fraudulent conduct by the atypical litigant who has demonstrated that he is not entitled to the relief available to the typical debtor." Id. at 374-75.

9. In addressing the issue of bad faith in the context of a motion to convert a case from chapter 7 to chapter 13, courts assess the totality of the circumstances based on factors such as the

nature of the debt; the timing of the petition; how the debt arose; the debtor's motive in filing the petition; how the debtor's actions affected creditors; the debtor's treatment of creditors both before and after the petition was filed; and whether the debtor has been forthcoming with the bankruptcy court and the creditors. In re Coley, 679 B.R. 183, 192 (Bankr. D.N.J. Mar. 10, 2026) (citing In re Lilley, 91 F.3d 491, 496 (3d Cir. 1996)). Other factors include whether the debtor can propose a confirmable chapter 13 plan; the impact on the debtor of denying conversion weighed against the prejudice to creditors caused by allowing the conversion; the effect of the conversion on the efficient administration of the bankruptcy estate; and whether conversion would further an abuse of the bankruptcy process. Ibid. (citing In re Shafer, 2009 Bankr. LEXIS 1386, 2009 WL 1651294, at *7 (Bankr. D.N.J. June 10, 2009)).

10. In this situation, courts address also the feasibility of a chapter 13 plan. In re Buccolo, 397 B.R. 527, 530 (Bankr. D.N.J. 2008) (citing 11 U.S.C. §1325(a)(6)). In so doing, a court must make a factual determination as to a plan's reasonable likelihood of success. Ibid. (quoting First Nat'l Bank of Boston v. Fantasia (In re Fantasia), 211 B.R. 420, 423 (B.A.P. 1st Cir. 1997)). In other words, "[t]he bankruptcy court should be satisfied that the debtor has the present as well as the future financial capacity to comply with the terms of the plan." Ibid. Thus, a plan is not feasible and is not confirmable if a debtor's income will not support the plan's proposed payments. Ibid. It follows that conversion should not be permitted when it would serve no point, such as in a case in which the debtor is incapable of proposing a feasible plan. Shafer, 2009 Bankr. LEXIS 1386, at *24 (citing In re Pakuris, 62 B.R. 330, 337 (Bankr. E.D. Pa. 2001)).

11. Applying this analysis, courts in this District have denied conversion of a case from chapter 7 to chapter 13 where the debtor filed his or her motion in response to an action by or to evade control of the chapter 7 trustee; where the debtor has not disclosed property; where the

debtor has not accurately disclosed his or her expenses; where the debtor has failed to establish that he has enough income to fund a chapter 13 plan, including more particularly, where the success of a chapter 13 plan is dependent on the support of a family member, or where the proposed plan fails to account for necessary life expenses or unforeseen emergencies; where conversion would prejudice creditors; and where a chapter 7 trustee could more efficiently administer the bankruptcy estate. See, e.g., Coley, 679 B.R. at 191-96 (denying debtor's motion to convert chapter 7 case to chapter 13 because among other reasons debtor failed to disclose information; the debtor could not confirm a plan; the chapter 7 trustee could move quickly to market and sell the debtor's real property and other assets and then review claims and make distributions; and "the purpose of the Motion is to permit the Debtor to maintain control of adversary proceeding [against her lawyers and other parties], and the Motion was only filed after defendants sought to dismiss due to the Debtor's lack of standing"); Shafer, 2009 Bankr. LEXIS 1386, at *21-30 (concluding that "the Debtor has not filed the conversion motion in good faith and that the totality of the circumstances surrounding the Debtor's conversion supports the denial of the motion" on grounds among others that "the Debtor, who has been in bankruptcy for well over a year, coincidentally or not, filed his conversion motion within weeks of learning of the Trustee's intent to pursue the Debtor's undisclosed properties, [and thus,] the Debtor's motive for converting and the timing of the request do not weigh in favor of a finding of good faith"; debtor did not properly disclose property in his Schedules or Statement of Financial Affairs or cooperate with trustee; "the Debtor only has $447.51 of 'Monthly Net Income,' which is not enough to fund a feasible plan"; and "creditors should not have to take the risk that the Debtor cannot meet the requirements of Chapter 13"); Buccolo, 397 B.R. at 535-36 (noting that "[c]ourts have skeptically looked upon plans that fail to factor in necessary life expenses or are so delicately budgeted that they fail to contemplate

unforeseen emergencies," that "[c]ourts have also been skeptical of plans that rely on the income of a non-debtor to succeed," and that "[t]his is true even in cases where the non-debtor is a spouse that otherwise pools income with the debtor"; and denying motion to reconvert case from chapter 7 to chapter 13 because, among other reasons, "[debtor] has failed to carry her burden of proving that the payments needed to fulfill her plan are likely to be made," where debtor's proposed plan left none of debtor's income for her family and her life expenses and debtor was completely reliant on husband's income to fund plan), aff'd, 2009 U.S. Dist. LEXIS 61029, at *28 (D.N.J. July 13, 2009) (affirming decision denying debtor's motion to re-convert her from chapter 7 to chapter 13 on basis that "[t]he Bankruptcy Court found numerous problems with feasibility [of debtor's proposed chapter 13 plan], including the fact that Debtor . . . would leave her family with no life expenses if she devoted her entire net income to the plan via a wage order [and] is completely reliant on her husband's income"); In re Truong, 2007 Bankr. LEXIS 749, at *12-13 (Bankr. D.N.J. Mar. 5, 2007) (denying debtor's motion to convert case from chapter 7 to chapter 13 because among other reasons "[debtors] have made inconsistent and unconvincing explanations of their assets and liabilities" and "they filed this motion to convert only after the Chapter 7 Trustee moved to remove them from their residence for failure to cooperate with him"). See also New Jersey Lawyers' Fund for Client Protection v. Goddard (In re Goaddard), 212 B.R. 233, 238-39 (D.N.J. July 7, 1997) (noting that the accuracy of debtor's reported income and expenses is required for a good faith analysis under section 1307(c); and vacating bankruptcy court order to extent it denied motion to dismiss chapter 13 petition and remanding matter for determination whether, in light of the totality of the circumstances, debtor filed his chapter 13 petition in good faith, where record contained no findings regarding whether chapter 13 petition was filed in good faith, and in particular, there were no findings regarding nature of the debt, timing of the petition, how the debt

arose, debtor's motive in filing petition, how debtor's actions affected creditors, debtor's treatment of creditors both before and after petition was filed, and whether debtor has been forthcoming with bankruptcy court and creditors; and where "the Debtor claimed responsibility for a larger portion of his family's living expenses").

### II. The Debtor Fails to Show Lack of Bad Faith and Feasibility of a Chapter 13 Plan.

12. Here, the Debtor fails, on the existing record, to show cause for conversion for the following reasons. First, in his Motion, the Debtor does not address some of the factors relevant to a determination of bad faith, such as the nature of his debts; the timing of the petition; how the debts arose; his motive in filing the petition; and how his actions affected creditors. Hence, as of now, this Court lacks a record on which to make a decision.

13. Second, although the Debtor referred without specificity to dividends in his Schedule I, Sch. I (ECF No. 1), and he admits in his Certification that he has received and continues to receive monthly distributions on account of his LLC interest, Certif. (ECF No. 33-1) ¶ 6, he has failed, since his petition filing almost 18 months ago, and despite repeated requests, to turn them over to the Trustee. What's more, the Debtor did not list his LLC interest in his Schedule A until well over a year after his petition filing. Am. Sch. A (ECF No. 30). Thus, the Debtor has failed to both list and account for property of the estate. Although the Debtor alleges that he disputes the Trustee's position that the LLC interest and dividends are property of the estate, Br. (ECF No. 33-9) at 10-11, he fails to explain how, having now listed the interest in his Amended Schedule A, he is not judicially estopped from denying that the interest is property of the estate. Also, the Trustee has alerted to the Debtor and cites in his Motion law indicating that a limited liability company member's rights and interests, both economic and non-economic, constitute property of the

estate. Motion (ECF No. 19) at 6.n.1. Despite repeated opportunities, the Debtor has been unable to, and even now he does not, cite law to the contrary.

14. Third, although he swore under penalty of perjury that his Schedules, including Schedule J pertaining to expenses, are true and correct, the Debtor now admits that he doesn't know to whom the listed expenses apply and that such expenses can be reduced "if necessary." Br. (ECF No. 33-9) at 8-9. Hence, he may have been untruthful, or at the very least negligent, in his computation of expenses. Also, without an accurate summary of the Debtor's expenses, this Court cannot determine , under Bankruptcy Code section 1325(b)(1)(B), whether the Debtor's proposed plan provides that all of the Debtor's projected disposable income will be applied to payments to unsecured creditors under the plan.

15. Fourth, the Debtor fails to explain how, having agreed to and signed the Settlement Agreement, pursuant to which he agreed to pay consideration in exchange for the Trustee's waiver and release of the estate's interest in the LLC, he can now seek conversion of this case and thereby renege on his obligations under the Agreement, the approval of which remains a pending matter, depending on whether the Debtor submits the highest and best bid at the auction of the interest.

16. Fifth, the Debtor acknowledges that he has sought conversion only after the Trustee commenced an auction process and George K. Sarris submitted an overbid for the LLC interest. Br. (ECF No. 33-9) at 7. Thus, the motive for and the timing of the Debtor's Motion may be suspect.

17. Finally, the Debtor fails to show that his proposed plan is feasible. Although he maintains that he will "pay his creditors through a plan funded by future income," Br. (ECF No. 33-9) at 5, his income would comprise only a small fraction of the plan funding. In truth, his family would contribute the bulk of the necessary capital. Id. at 8. The Debtor neglects, however,

to provide evidence of the capacity of either his wife or son – to say nothing of other unidentified family members – to make plan payments. Also, it is unclear whether the proposed plan will account for necessary life expenses or unforeseen emergencies. Moreover, even assuming that family members can in fact demonstrate an ability to make contributions, creditors would have to wait up to five years for payment under the Debtor's proposed plan.[1] Ibid. Meanwhile, under either the pending Settlement Agreement or the Trustee's proposed auction process, unsecured creditors will receive payment in full in short order. Therefore, conversion may not result in more efficient administration of the bankruptcy estate; in fact, it may prejudice creditors.

18. Accordingly, the Debtor fails on this record to show cause for conversion of his case to chapter 13.[2]

---

[1] The Debtor indicates that while general unsecured creditors would be paid in full within 30 days after conversion, chapter 7 administrative claimants would receive payment only in "substantial part" and would have to wait to receive the balance of payments over time. Br. (ECF No. 33-9) at 8. Suffice it to say, he cites no authority for an arrangement whereby general unsecured creditors can receive payment before administrative priority claimants. Likewise, he fails to identify on what basis general unsecured creditors can receive interest on their claims. Id. at 7.

[2] The Debtor maintains that if this Court does not convert the case, this Court should not permit an auction or sale of the interest to proceed unless and until the Trustee obtains a determination that the interest is property of the estate. Br. (ECF 33-9) at 10-11. As noted above, the Debtor has not only listed the LLC interest in his Schedule A, he has also failed to effectively argue or cite any authority indicating that the interest is somehow *not* property of the estate. Thus, a determination is not necessary. Also, the Debtor suggests that the Trustee's sale of the LLC interest to George K. Sarris would violate the LLC Agreement. Id. at 10. He is mistaken. Insofar as either an Operating Agreement provision, such as section 5.2 addressing "Conditions of Transfer," section 5.3 addressing "Right of First Offer," or section 5.5.1 addressing the right of "Optional Purchase," or New Jersey law purport to restrict the right to transfer the Debtor's membership interest, or condition the Debtor's interest in the LLC, Bankruptcy Code section 541(c) expressly preempts such provisions and law, and thus, such provisions and law do not prevent the Debtor's rights as a member – any and all of them – from qualifying as property of the estate. Also, under section 363(l), the trustee may use, sell, or lease property under section 363(b) notwithstanding any provision in a contract, a lease, or applicable law that is conditioned on the commencement of a case under this title concerning the debtor, and that effects, or gives an option to effect, a forfeiture, modification, or termination of the debtor's interest in such property. Based on this authority, courts have allowed bankruptcy trustees to sell a debtor's membership interest in a limited liability company. See, e.g., In re Rosbottom, 2010 Bankr. LEXIS 2864, at *1, 3 (Bankr. W.D. La. Aug.

## CONCLUSION

**WHEREFORE**, the Trustee respectfully requests that unless the Debtor can satisfy his burden of showing cause for conversion, this Court deny the Debtor's Motion.

Dated: Oct. 27, 2026
Livingston, New Jersey

**RABINOWITZ, LUBETKIN & TULLY, LLC**
Attorneys for Jeffrey A. Lester, Chapter 7 Trustee

By: /s/ Jonathan I. Rabinowitz
JONATHAN I. RABINOWITZ

---

19, 2010) (authorizing trustee's sale of bankruptcy estate's interest in limited liability company, which owned real property, to other member of LLC); In re Holwerda, 428 B.R. 730, 731 (Bankr. W.D. Mich. May 4, 2010) (authorizing chapter 7 trustee's sale of bankruptcy estate's interest in 13 limited liability companies to debtor's business partner); In re Adams, 424 B.R. 434, 434-35, 437 (Bankr. N.D. Ill. 2010) (granting chapter 7 trustee's motion for leave to sell estate's interest in limited liability company to another member of LLC, where debtors failed to offer to pay more than proposed sale price and failed to produce bidder of their own willing to do so); In re Harding, 2009 Bankr. LEXIS 4206, at *1, 12-14 (Bankr. D. Mass. Jan. 23, 2009) (approving chapter 7 trustee's sale of debtor's membership interest in limited liability companies, one of which owned and the other of which leased certain real estate, to other member of one of the companies); see also Hickory, 2010 Bankr. LEXIS 1131, at *16 ("Once a managing member's interest in a limited liability company becomes part of the bankruptcy estate, the trustee is free to use, sell or lease that property pursuant to 11 U.S.C. § 363(l) . . . ."); Meagher v. Todd (In re Meagher), 384 B.R. 454, 456 (Bankr. N.D. Tex. 2008) (noting that chapter 7 trustee sold estate's interest in limited liability company back to debtor).